FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. Sec. 1983

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
Pine Bluff                    DIVISION

FILED
EASTERN DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 3 1 2003

JAMES W. McCORMACK, CLE
By:_____

Jesse Robert Furr
_____

ADC #  96099

_____

(Enter above the full name of the
plaintiff, or plaintiffs, in this
action.)

V.                                    CASE NO. 5:03CV00123
                                                        JTR

Greg Harmon; Tommy James; Dr. James I. Cagle, MD; Dr.
Anderson, MD; Sara Speer

(Enter above the full name of
defendant or defendants, in         This case assigned to District Judge Wilson
this action.)                       and to Magistrate Judge Ray

I.    Previous Lawsuits

      A.    Have you begun other lawsuits in state or federal court
            dealing with the same facts involved in this action?

            Yes _____   No  X

      B.    If your answer to A is yes, describe each lawsuit in
            the space below.  (If there is more than one lawsuit,
            describe the additional lawsuits on another piece of
            paper, using the same outline.)

            1.    Parties to this lawsuit

                  Plaintiffs: _____

                  _____

                  Defendants: _____

                  _____

            2.    Court (If federal court, name the district; if state
                  court, name the county: _____

                  _____

-1-

3. Docket Number: _____

4. Name of Judge to whom case was assigned: _____

5. Disposition (for example: Was the case dismissed? was it appealed? Is it still pending?): _____

6. Approximate date of filing lawsuit: _____

7. Approximate date of disposition: _____

II. Place of present Confinement: Arkansas Department of Correction, Maximum Security Unit Tucker, Arkansas

III. There is a prisoner grievance procedure in the Arkansas Department of Correction. **Failure to complete the grievance procedure may affect your case in federal court.**

    A. Did you present the facts relating to your complaint in the state prisoner grievance procedure?

       Yes X    No ___

    B. If your answer is YES, Attach copies evidencing completion of **the final step of the grievance appeal** procedure. FAILURE TO ATTACH THE REQUIRED COPIES MAY RESULT **IN THE DISMISSAL OF YOUR COMPLAINT.**

    C. If your answer is NO, explain why not: _____

IV. Parties
(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

    A. Name of plaintiff: Jesse Robert Furr

       Address: 2501 State Farm Rd., Tucker, Arkansas 72168-9503

       Name of plaintiff: _____

       Address: _____

       Name of plaintiff: _____

       Address: _____

1 1

(In Item B below, place the full name of the defendant in
the first blank, his official position in the second blank,
his place of employment in the third blank, and his address in
the fourth blank.)

Defendant: Greg Harmon

Position : Warden

Place of employment: East Arkansas Regional Unit

Address: 326 Lee 601, P.O. Box 180, Brickeys, Arkansas 72320


Defendant: Tommy James

Position : Assistant Warden

Place of employment: Maximum Security Unit

Address: 2501 State Farm Rd., Tucker, Arkansas 72168-9503


Defendant: Dr. Anderson, MD                    First Name Unknown

Position : Medical Doctor

Place of employment: Maximum Security Unit

Address: 2501 State Farm Rd., Tucker, Arkansas 72168-9503


Defendant: Dr. James I. Cagle, MD

Position : Medical Doctor

Place of employment: Arkansas Department of Correction

Address: P.O. Box 8707, Pinr Bluff, Arkansas 71611

Defendant: Sara Speer -----(No longer works at Max Unit; now works at Alexander Youth Center)

Position : Infirmary Manager or Staff Personnel

Place of employment: Alexander Youth Center

Address: Alexander Youth Center, Alexander, Arkansas

V.  Statement of Claim

State here as briefly as possible the <u>facts</u> of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

(SEE ATTACHED PAGES)

VI.  Relief

State briefly exactly what **YOU want the court to do for** YOU. Make **no legal arguments. Cite no cases or statutes.**

(SEE ATTACHED PAGES)

I declare under penalty of perjury (18 U. S. C. § 1621 that the foregoing is true and correct.

Executed on this _26_ day of _March_, 20_03_.

_____[signature]_____

Signature(s) of plaintiff(s)

-4-

## STATEMENT OF CLAIM

Sometime around December 29, 1994 to November 30, 1995 I was medically taken out of the fields and given an inside job, because of a partial disability I received from the free-world after being injured on a drilling rig. On or about 1993 I was medically classified as M-2 with several restrictions.

On or about February 1989, I was injured while working on a drilling rig. I sustained many injuries from this incident, including a back injury. From the time of the injury in 1989 until around January 1990 I was under the care, and treatment, of Dr. Marten Geitz, a back specialist out of Odessa, Texas. During this time I was not allowed to return to work. This doctor completed a series of test and, based on his opinion and medical experience, determined that my injuries were serious enough to render a partial disability on my back. I was awarded with a partial disability from the State of Texas.

On or about 1995, 96, or 97 I was diagnosed with having tendonitis in both my right and left arms. I was diagnosed by Dr. Anderson, Dr. Young, Dr. Sangoseni, RNP Becky Johnston, and several other medical staff members with having tendonitis. I was put on Indomethacin 50 mg. for the pain and swelling, this is a pain reliever for joint pain, stiffness, inflammation and swelling of arthritis and gout.

**March 6, 2002** I was reassigned by the unit classification committee and placed on Field Utility #1. I informed Warden Harmon, who was the head committee member, as well as, an employee of the Arkansas Department of Correction, that I was medically taken out of the fields around 1994 or 1995 due to the disability on my back. I also told him of the tendonitis, that when strained or abused, causes sever pain and swelling in my arms. This committee assigned me to field activity anyway.

I asked Ms. Speer the infirmary manager, who was also a member of the unit classification committee, to explain my medical problems and restrictions to Warden Harmon, as this is her job on this committee. She said there was nothing she could do. Ms. Speer said that I could go to work in the fields, so the committee decided that I was physically and medically capable of performing this outside work.

Since March 6, 2002 I have put in numerous amounts of sick call request with the unit infirmary concerning my medical problems. At this time Field Utility only worked four (4) hours a day. Because of the pain and swelling in my arms due to the type of strenuous work I did, I was given a medical script for one (1) arm duty because the tendonitis in my left arm was worse than my right.

**June 26, 2002** the unit RNP, Becky Johnston, felt my medical problems were serious enough to issue me a medical script for a fifteen (15) pound weight limit, four (4) hours work duty assignments only, and one (1) arm duty that would of expired on December 26, 2002. This medical script took me out of the fields. **(See Exhibit - A)**

1

I went up before the unit classification committee on July 3, 2002 to be reassigned to Inside Building Utility, the proper job assignment for my medical restrictions. Warden Harmon, the head committee member, deferred me stating that they had to get with the infirmary on my medical script. Assistant Warden James, second in command of this committee, stated that the signature on the medical script was not worth the paper it was written on, and that he personally was going to talk to the doctor concerning the medical scripts Ms. Johnston was writing.

Again on July 17, 2002 I was brought up before the unit classification committee to be reassigned to Inside Building Utility. Warden Harmon asked the field major, who was also a member of the classification committee, if he had got with the infirmary concerning my medical script, he said that he hadn't. Ms. Speer the infirmary manager, also a committee member, who has every inmates medical MSF-103 forms present this day. I asked her to explain to this committee my medical restrictions. Ms. Speer put her hands in the air and said she did not know. Warden Harmon once again deferred me stating that they needed to get with the infirmary.

**July 19, 2002** the infirmary porter, an inmate, brought me a new medical script from Becky Johnston for one (1) arm duty only. He ,the inmate, stated that Ms. Johnston said this was all she could do for me because Warden James, and Ms. Speer went to Dr. Anderson about this medical script and said that I didn't need it. Dr. Anderson had Ms. Johnston change my medical restrictions without first re-evaluating me. **(See Exhibit - B)**

**July 22, 2002** I was told that I had to report back to field work or face major disciplinary. The Field Utility Squads now work eight (8) hours a day. Later that day at work because of my weight of over 300 pounds and a temperature of 98°, I became extremely overheated to the point of staggering then falling to my knees of heat exhaustion. At this point I completely stopped sweating , and began to have chest pains and body cramps. I was taking to the infirmary and treated by nurse Seals for heat exhaustion, which resulted in 24 hours bed rest.

**July 23, 2002** I filed an emergency grievance on this but, was said by Warden Harmon not to be an emergency situation. From July 23, 2002 to August 30, 2002 I filed several emergency grievances concerning my medical situation. ALL grievances were ignored. **(See Exhibit (s) - G)**

**July 30, 2002** after eight (8) days of not working, Field Utility Squad was taken out. Later this day I began to have sever chest pains, and ,over heated. I informed the squad rider of my situation, a short while later I completely passed out due to the extensive heat. Several inmates on my squad carried me to a shade tree, the field rider called for Lt. Shelton who took me to the infirmary where I was treated by Ms. Speer. Because my temperature was 102°, Ms. Speer had me put in a bath tub of luke warm water to bring my body

2

temperature down. I was giving a three day lay-in, nothing was done for the chest pains.

**August 1, 2002** I filed a letter complaint with Correctional Medical Services (CMS) concerning the negligence, and how the infirmary was letting non-medical personnel dictate what inmates need or don't need when it comes to medical treatment or restrictions. This complaint was unanswered. **(See Exhibit - C)**

Again on August 2, 2002 while at work in the fields I began to have sever chest pains. During turn in I informed Sgt. Moore of my chest pain, he took me to the infirmary where I was once again seen by Ms. Speer. I was giving no treatment whatsoever. Ms. Speer said I would see Dr. Anderson or, he would review my medical chart about giving me a four (4) hour work assignment medical script, because she said I didn't need to work in the fields eight (8) hours a day because of my weight of over 300 pounds. She also stated that she felt my chest pains were caused by me overheating in the fields. Four (4) hour outside duty is one of the restrictions Ms. Johnston gave me, but, was taken because of interference by Ms. Speer and Assist Warden James. Dr. Anderson on August 3, 2002 issued me a script for four (4) hours outside duty only for the remainder of the summer, I was not evaluated by him. **(See Exhibit - D)**

**August 5, 2002** I went to sick call concerning chest pains, as well as, pain and swelling in my elbow and hand. I was told that my vital signs were ok, with no other treatment done. I was told to come back if I continued to have chest pains.

**August 6, 2002** I turned in a sick call because I hurt my back when I slipped on the wet floor getting out of the shower, pain and swelling in my elbow and hand, and chest pains. I was not seen by anyone.

**August 7, 2002** I wrote a letter to Ms. Speer after continuing to have chest pains and asked if she would let me see Dr. Anderson concerning these chest pains. I also informed Ms. Speer that I have a history of heart attacks in my family. I also turned in a sick call request concerning my back pain, pain and swelling in my elbow and hand, and chest pains. I was seen by nurse Mitchell and was giving three (3) days no duty and pain relievers for the pain in my back, hand and elbow. I was also scheduled to see the doctor. **(See Exhibit - E)**

**August 8, 2002** I was called to the infirmary to see a new doctor, Dr. James I. Cagle, I was not scheduled to see anyone this day. Ms. Speer called me to her office and said that this was the day that all my problems were going to be dealt with. Ms. Speer told Dr. Cagle that she had to speak with him before he seen me. Dr. Cagle and Ms. Speer had a behind closed door meeting for approximately fifteen (15) minutes concerning me. When I was called to see Dr. Cagle he began asking me questions about the type of pain I was having in my arms. After explaining this to him, Dr. Cagle said he was going to give me a blood test while my arms were inflamed. I informed him that my arms were not flamed because of the pain relievers I had been taking. I also informed him that my arms only become inflamed when strained or abused. I also began to tell him about my

3

back pain, how I hurt it slipping on the wet floor getting out of the shower and how it was still a little sore, also of the free-world disability on my back. Dr. Cagle gave me a blood test and scheduled me for a follow-up appointment and back x-rays for August 12, 2002. Dr. Cagle informed me that a blood test would do no good if my problems were not inflamed.

**August 12, 2002** I was called to the infirmary for another blood test. The treating nurse said that Ms. Speer ordered another blood test because the test Dr. Cagle took was not sent out on time and another one had to be done. I informed this nurse that Dr. Cagle said that a blood test would do no good if the problems were not inflamed, which at this time they were not inflamed, the blood test was taken anyway.

**August 27, 2002** I went to doctor's call to see Dr. Cagle. Dr. Cagle said that my blood test came back normal and he sees no sign of me having tendonitis or lower back pain flair ups. I informed Dr. Cagle that Ms. Speer had more blood drawn from me on August 12, 2002 because they messed up on the one he did. He refused to act on this or schedule me for another blood test when I was having flair up problems. I reminded him of what he said concerning a blood test being no good if the problem was not inflamed, which mine wasn't at the time due to pain relievers. Dr. Cagle based his opinion on a blood test, he himself said would be no good if my problem was not inflamed. I also told Dr. Cagle that the back x-rays that he ordered were never done. He ignored this and based his opinion on the blood test alone. Dr. Cagle refused to acknowledge my free-world disability or to act in any way to my medical problems. He has taken all my restrictions that deal with my tendonitis, which has caused constant pain and swelling in my arms. This doctor based on a blood test that was taking when there was no inflammation said I didn't have tendonitis but, on two occasions after this, he renews my Indomethacin which treats the tendonitis.

Some time in September 2002, I was called to the infirmary, x-rays that Dr. Cagle ordered in August were finally taken. I was called back to the infirmary a week or so later to see Dr. Cagle. Dr. Cagle said my back x-rays were fine and he sees no problems with my back. I informed him that my free-world doctor had to do a cat scan which discovered my medical problem because it would not show in an x-ray. Dr. Cagle refused to order another cat scan because of the cost. A Cat scan will show the full extent of my back condition.

In November 2002, I filed a complaint against Dr. James I. Cagle with the Arkansas State Medical Board. In Dr. Cagle's report to this medical board he told them Quote: **"I did not reach my conclusion because I harbor animosity toward Mr. Furr. Do I believe Mr. Furr is malingering? Yes, I do."** (See pg. 3 of Exhibit - F)

The Definition of Malingering:

**MALINGERING:** **1. To pretend to be ill or otherwise physically or mentally incapacitated**

4

**so as to avoid duty or work. 2. To Deliberately induce, protract, or exaggerate actual illness or other incapacity so as to avoid duty or work.**

Warden Harmon and Assistant Warden James, have violated my Fourteenth (14) Amendment Right to Due Process and Eighth (8) Amendment Right to be free of Cruel and Unusual Punishment. Both of these officials have interfered with prescribed medical treatment, which has caused me pain and suffering by forcing me to perform work assignment outside my medical capability. It was their duty as the classification committee to see that I am properly assigned to a job that fits my medical condition. By these officials doing this they have shown Deliberate Indifference.

Correctional Medical Services (CMS), Dr. James I. Cagle, Dr. Anderson and Sara Speer have violated my Fourteenth (14) Amendment Right to Due Process and Eighth (8) Amendment Right to be free of Cruel and Unusual Punishment, as well as, my Right under The Americans With Disabilities Act (ADA).

Ms. Speer has shown Deliberate Indifference when she failed as a member of the unit classification committee to inform this committee of my medical problems, which this is her job on this committee. Also when she knew of my medical condition she signed and agreed that I capable of doing this type of work. This is also Negligence and Medical Malpractice.

Dr. James I. Cagle has shown Deliberate Indifference by knowing of my medical condition, and free-world medical disability but continued to have me perform work that was hurting me. In fact Dr. Cagle has shown Negligence and Medical Malpractice.

Dr. Anderson has shown Deliberate Indifference when he allowed non-medical personnel to interfere with prescribed medical treatment. Dr. Anderson has shown Deliberate Indifference, negligence , and Medical Malpractice when he ordered Ms. Johnston to changed my restrictions without first evaluating me, and then giving me some of the same restrictions back that he ordered changed without evaluating me first.

Correctional Medical Services (CMS) has shown Deliberate Indifference when they failed to act or acknowledge the medical complaint I filed with them against Dr. Cagle. They have been made aware of the situation but, refused to act or to instruct their employees to administer proper medical treatment, which is a clear violation of my Fourteenth (14) Amendment Right to Due Process and Eighth (8) Amendment Right to be free of Cruel and Unusual Punishment.

## RELIEF

Petitioner asks for five thousand ($5000.00) dollars a piece from, Greg Harmon, Warden and Tommy James, Assistant Warden, in their official capacity, and five thousand ($5000.00) dollars a piece in their unofficial capacity. For their willingly and knowingly violation of petitioners Fourteenth (14) Amendment Right to Due Process and Eighth (8) Amendment Right to be free of Cruel and Unusual Punishment, as well as my right under The Americans with Disabilities Act (ADA), and A.D.C. policy. And to have my medical and restrictions corrected.

Petitioner asks for five thousand ($5000.00) dollars a piece from, Correctional Medical Services (CMS), Dr. Anderson, MD, Dr. James I. Cagle, MD, and Sara Speer, RN, in their official capacity, and five thousand ($5000.00) dollars a piece in their unofficial capacity. For their willingly and knowingly violation of petitioners Fourteenth (14) Amendment Right to Due Process and Eighth (8) Amendment Right to be free of Cruel and Unusual Punishment, as well as my right under The Americans with Disabilities Act (ADA), and A.D.C. policy. And to have my medical and restrictions corrected.

Plaintiff also ask that relief in the amount of $10,000.00 in damages for pain and suffering and any and all other relief this Honorable Court deems necessary.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# Exhibits Attached to Original Documents in Court's Case File